UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER BURGOS,

                    Plaintiff,

        -v-

CITY OF NEW YORK,

                    Defendant.

18-CV-1150 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiff Christopher Burgos filed this action against Defendant the City of New York ("the City") on February 8, 2018. (*See* Dkt. No. 1.) Burgos alleges that the City discriminated and retaliated against him on the basis of race and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); and New York City Human Rights Law, Admin. Code of the City of N.Y. § 8–107 ("NYCHRL"). The City moves to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, its motion is granted in part and denied in part.

I.      **Background**

The following facts are taken from the Complaint (Dkt. No. 1 ("Compl.")) and are assumed true for the purposes of this motion.

Plaintiff Christopher Burgos is "Hispanic" and "practic[es] Islam as his religion." (Compl. ¶ 11.) On or about July 10, 2000, Burgos began working as a Sanitation Worker with the New York City Department of Sanitation ("the Department"). (*Id.* ¶ 6.) He was promoted to Sanitation Supervisor on or about June 5, 2006 and continued to be employed in that role as of February 8, 2018. (*Id.*)

1

Burgos contends that he was "treated differently than his peers as a result of being Hispanic and of practicing Islam as his religion." (*Id.* ¶ 11.) Specifically, Burgos alleges that he was "told by Chief [Paul] Visconti"—now the Chief of Cleaning Operations of the Department—"that [Burgos] would never be promoted as long as [Visconti] was Chief in that department." (*Id.* ¶¶ 8, 11.) As a result of this treatment, Burgos filed an internal complaint with the Department's Equal Employment Opportunity Office on December 18, 2012. (*Id.* ¶ 10.)

According to Burgos, filing the internal complaint caused him to "encounter[] a hostile work situation from upper management" of the Department. (*Id.* ¶ 12.) He subsequently filed a complaint with the New York State Division of Human Rights ("NYSDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"), received a right to sue letter, and in February 2013 joined Black and Hispanic supervisors in filing a class action lawsuit against the Department. (*Id.* ¶¶ 12–13.)

As a result of these administrative and judicial actions, Burgos represents that he "has been retaliated against and has endured disparate treatment," including being subject to "disciplinary actions." (*Id.* ¶ 14.) For example, as a result of disciplinary charges against him, Burgos received "unsatisfactory" ratings in his performance evaluations for the evaluation periods of July 1, 2012 to June 30, 2013, and July 1, 2013 to June 30, 2014. (*Id.* ¶¶ 15–17.)[1] Because employees must receive two consecutive "satisfactory" evaluations to be eligible for a

---

[1]     The three performance ratings in the Department, from best to worst, are: "satisfactory," "conditional," and "unsatisfactory." By Burgos's understanding, these ratings depend on quality of work and number of complaints received. (Compl. ¶ 19.)

In 2015, Burgos contested eight disciplinary charges that had been brought against him, and the New York City Civil Service Commission dismissed six of the charges on May 6, 2016. (*Id.* ¶ 15.) But Burgos was unable to subsequently upgrade his performance ratings for the 2012–2013 and 2013–2014 evaluation years. (*Id.* ¶ 21.)

promotion, Burgos alleges that those negative ratings caused him to be denied a promotion.  (*Id.* ¶¶ 18, 20.)

Two more disciplinary charges followed in February and April 2016, which Burgos contends were unwarranted.  (*Id.* ¶¶ 23–24.)  As a result, Burgos's performance was rated "conditional" for the evaluation period of July 1, 2015 to June 30, 2016.  (*Id.* ¶ 23.)  The following year, Burgos was subject to two additional disciplinary complaints, the first incident occurring December 3, 2016 with a complaint dated December 7, 2016, and the second incident occurring on June 28, 2017 with a complaint dated July 3, 2017.  (*Id.* ¶ 26.)  For the corresponding evaluation period—July 1, 2016 to June 30, 2017—Burgos had initially received a "satisfactory" performance rating, but upon receiving the July 3, 2017 complaint his rating was downgraded to "conditional."  (*Id.* ¶ 26.)[2]  An amended performance evaluation was issued on July 3, 2017, which Burgos did not sign given his belief that a signature was not required.  (*Id.*)

On July 13, 2017, Burgos filed a charge of discrimination with the EEOC, alleging retaliation against him for participating in the 2013 class action.  (*Id.* ¶ 28.)  After filing the EEOC charge, Burgos was "harassed and bullied" over his failure to sign the amended performance evaluation.  (*Id.* ¶ 29.)  In a conversation with a supervisor, Burgos was given a direct order to sign the evaluation, Burgos asked "to confer with his union personally because he felt his rights were being violated."  (*Id.*)  Burgos subsequently received a disciplinary charge on July 24, 2017, "for failing to obey a direct order from a supervisor to sign [the] evaluation."  (*Id.*)

The EEOC issued a right to sue notice to Burgos on November 22, 2017.  (*Id.* ¶ 28.)  On February 8, 2018, Burgos filed his Complaint against the City, alleging that he had experienced

---

[2]        After the two less-than-satisfactory performance ratings in the 2015–2016 and 2016–2017 evaluation years, Burgos was again ineligible for promotion.  (Compl. ¶ 27.)

disparate treatment, retaliation, and a hostile work environment in violation of Title VII, the

NYSHRL, and the NYCHRL. (*Id.* ¶¶ 30–35.) Burgos also claimed that he had suffered an

intentional infliction of emotional distress. (*Id.* ¶¶ 38–39.) The City moved to partially dismiss

Burgos's Complaint for failure to state a claim upon which relief can be granted under Rule

12(b)(6). (Dkt. No. 11; Dkt. No. 12 at 1.) Specifically, the City seeks to dismiss all disparate

treatment claims, the retaliation claim brought under Title VII, and the claim for intentional

infliction of emotional distress. (Dkt. No. 12 at 2.)[3]

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient matter . . . 'to state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* In assessing whether this standard has been met, courts must "accept[]

as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor."

*Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v.*

*Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)). But courts need not "accept as

true" statements of "legal conclusions" in the complaint, and "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat

a motion to dismiss under Rule 12(b)(6). *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)

(quoting *Iqbal*, 556 U.S. at 678).

---

[3]     The City does not seek dismissal of Burgos's retaliation claims under the
NYSHRL and the NYCHRL, or Burgos's hostile work environment claims.

## III.     Discussion

The City moves to dismiss Burgos's claims, contending that: (1) the claims are barred in part by the statutes of limitations; (2) Burgos has not stated a plausible claim of discrimination under any applicable statute; and (3) Burgos has not stated a plausible claim of retaliation under Title VII.[4]  The Court addresses these three arguments in turn.

### A.     Statutes of Limitations

The City first contends that Burgos's claims are barred in part by the statutes of limitations.  (Dkt. No. 12 at 4–5.)

"In New York, claims under Title VII . . . are subject to a 300-day statute of limitations—claims that accrued more than 300 days before the filing of a charge with the EEOC are time-barred." *Almontaser v. N.Y. C. Dep't of Educ.*, No. 13 Civ. 5621, 2014 WL 3110019, at *5 (E.D.N.Y. July 8, 2014); *see* 42 U.S.C. § 2000e-5(e)(1).  Burgos filed his charge of

---

[4]     The City also moves to dismiss Burgos's intentional infliction of emotional distress claim.  (Dkt. No. 12 at 13.)  In a declaration accompanying the opposition to the motion to dismiss, Burgos's attorney stated that "plaintiff is withdrawing that portion of the Second Cause of Action which alleges an intentional infliction of emotional distress by the defendant." (Dkt. No. 18 ¶ 3.)  As a result, the City contends that this claim "must be dismissed with prejudice."  (Dkt. No. 19 at 4.)  The Court disagrees.

Under Rule 41(a)(1)(A), "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A).  There appears to be some disagreement among courts in this Circuit regarding whether this rule permits only the voluntary dismissal of an entire action, or also permits the voluntary dismissal of individual claims.  *See Century Sur. Co. v. Vas & Sons Corp.*, No. 17 Civ. 5392, 2018 WL 4804656, at *2 (E.D.N.Y. Sept. 30, 2018). The Court will follow the numerous other courts in this Circuit that have interpreted Rule 41(a)(1)(A) to permit the withdrawal of individual claims.  *See Azkour v. Haouzi*, No. 11 Civ. 5780, 2013 WL 3972462, at *3 (S.D.N.Y. Aug. 1, 2013) (collecting cases); *Nix v. Office of Comm'r of Baseball*, No. 17 Civ. 1241, 2017 WL 2889503, at *3 n.2 (S.D.N.Y. July 6, 2017).

Here, Burgos stated his desire to withdraw the claim for intentional infliction of emotional distress in his counsel's declaration.  (Dkt. No. 18 ¶ 3.)  The Court construes this as a notice of dismissal of the claim.  Because the notice was filed before the City has served an answer or motion for summary judgment, Rule 41(a)(1)(A) applies, and the effect of this withdrawal is a "dismissal without prejudice" of the claim.  Fed. R. Civ. P. 41(a)(1)(B).

discrimination with the EEOC on July 13, 2017.  (Compl. ¶ 28.)  As a result, the City contends

that Burgos's Title VII claims are time-barred to the extent they rely on acts occurring before

September 16, 2016.  (Dkt. No. 12 at 4.)

Burgos agrees about the applicable statute of limitations, but notes that three alleged

adverse actions occurred after September 16, 2016:  (1) a December 3, 2016 disciplinary

complaint against Burgos (Compl. ¶ 26); (2) a July 3, 2017 disciplinary complaint against

Burgos (*Id.*); and (3) the July 3, 2017 amendment of Burgos's annual performance evaluation

from "satisfactory" to "conditional" (*Id.*).  (Dkt. No. 17 at 10.)  For the events that precede

September 16, 2016, Burgos concedes that they cannot establish a claim, but offers them as

"background evidence in support of a timely claim."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536

U.S. 101, 113 (2002).[5]  The Court will treat those time-barred acts accordingly.

The NYSHRL and NYCHRL each impose a three-year statute of limitations for

employment discrimination claims.  N.Y.C. Admin. Code § 8-502(d); N.Y. Exec. Law § 297.

The parties again agree that any acts that occurred more than three years before this action was

commenced cannot form the basis of claims under these statutes.  (Dkt. No. 12 at 5; Dkt. No. 17

at 10–11.)  In assessing Burgos's claims under the NYSHRL and the NYCHRL, therefore, the

Court will look only to acts occurring after February 8, 2015.

---

[5]        Later in his opposition brief, Burgos directs the Court's attention to a block quote
from *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001).  (Dkt. No. 17 at 16–17.)  The quote
describes the continuing violation doctrine, whereby actions occurring outside of the statute of
limitations period can form part of an actionable discrimination claim if those actions form part
of a policy or practice of discrimination that continue into the limitations period.  (*Id.*)  However,
Burgos does not explain how he was subjected to a policy of discrimination, and does not
identify which additional acts outside the limitations period the Court should be considering in
assessing his disparate treatment or retaliation claims.  Because Burgos has offered no argument
on this question, beyond the insertion of a descriptive block quote from the case law, the Court
will not address the applicability of the continuing violation doctrine here.

## B.      Disparate Treatment Claims

The City seeks to dismiss Burgos's claims of disparate treatment discrimination under

Title VII, the NYSHRL, and the NYCHRL, arguing that the Title VII claims were not properly

exhausted, and that none of the claims are plausibly alleged in the Complaint.

### 1.      Exhaustion of Administrative Remedies under Title VII

The City contends that Burgos failed to raise claims of disparate treatment under Title

VII in his complaint to the EEOC, and thus did not properly exhaust administrative remedies

with respect to these claims.  (Dkt. No. 12 at 6–7.)  Burgos responds that he has properly brought

the disparate treatment claims in this action because they are reasonably related to the retaliation

claims asserted in his July 13, 2017 EEOC charge.[6]  (Dkt. No. 17 at 11–13.)

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue

available administrative remedies and file a timely complaint with the EEOC."  *Hardaway v.*

*Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quoting *Deravin v. Kerik*, 335

F.3d 195, 200 (2d Cir. 2003)).  However, claims that were not raised to the EEOC can be

pursued in an action under Title VII "if they are reasonably related to those that were filed with

---

[6]      Courts cannot "consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013).  However, a "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 121 (S.D.N.Y. 2012) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  "A document is incorporated by reference when it is 'integral' to the complaint," and can be considered if it is "clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Fox v. Citizens Bank N.A.*, No. 17 Civ. 656, 2018 WL 1478046, at *3 (S.D.N.Y. Mar. 26, 2018) (second quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Because the EEOC charge intake questionnaire at issue was referenced in the Complaint (Compl. ¶ 28), is integral to Burgos's ability to bring the Title VII claims asserted in the Complaint, and its authenticity is not disputed by the City (Dkt. No. 19 at 3), the Court will consider it here.

the agency." *Deravin*, 335 F.3d at 200 (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). In order for a claim to be considered reasonably related, "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin*, 335 F.3d at 200–01 (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001)). To determine whether claims satisfy this requirement, courts should focus "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (brackets omitted) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam) (quoting *Deravin*, 335 F.3d at 202).

As the parties agree, Burgos's EEOC intake questionnaire indicated "retaliation" as the only basis for his claim, not "race" or "religion." (Dkt. No. 18 at 5.) The actions of which Burgos complains on the form are the amendment of his performance evaluation from "satisfactory" to "conditional," and the issuance of the July 3, 2017 disciplinary charge. (*Id.*) In response to the question of why he "believe[s] these actions were discriminatory," Burgos wrote that the "actions were retaliatory to hinder me once again from being promoted . . .in retaliation for being a part of a class action lawsuit against the dept. for unfair promotional practices against minorities." (*Id.*)

Burgos contends that these statements were sufficient to give the EEOC notice to investigate whether he had suffered race and religious discrimination, as well as retaliation. (Dkt. No. 17 at 12–13.) The Court disagrees.

The EEOC's investigation growing out of Burgos's charge could not reasonably be expected to encompass religious discrimination. The intake questionnaire is devoid of any reference to religion, and the protected activity on which the alleged retaliation is based—the 2013 class action—did not involve claims of religious discrimination. (Compl. ¶ 14.)

Nor was the reference to the 2013 class action alone sufficient to render the race-based disparate treatment claim "reasonably related" to the retaliation charge. The intake questionnaire includes no allegations of racial discrimination and does not actually mention race at all, even in the description of the 2013 class action. *See Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 375 (S.D.N.Y. 2002) (holding that race discrimination claim was not reasonably related to retaliation claim where race was not mentioned in charge). The questionnaire gives no indication that Burgos continued to suffer from whatever alleged discrimination motivated the class action for years prior. As such, Burgos's charge does not contain any "specific factual allegations [to] put the EEOC on notice that, in addition to a retaliation claim, a [race] discrimination claim may also exist." *Williams*, 458 F.3d at 71. The Title VII disparate-treatment claims are thus dismissed for failure to exhaust administrative remedies. In any event, the Complaint fails to establish a *prima facie* case of race or religious discrimination under Title VII, as explained below.

### 2. Failure to Establish a Prima Facie Case of Discrimination

The City also argues that Burgos has failed to allege a plausible *prima facie* case of discrimination under Title VII, the NYSHRL, or the NYCHRL. (Dkt. No. 12 at 7–9.)

### a. Title VII and NYSHRL Claims

Disparate treatment claims under Title VII and the NYSHRL are "subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Gordon v. City of New York*, No. 14 Civ. 6115, 2015 WL 3473500, at *6 (S.D.N.Y.

June 2, 2015).  In evaluating a motion to dismiss such disparate treatment claims, courts consider "whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation."  *Littlejohn*, 795 F.3d at 312.  To meet these reduced requirements, a complaint must allege facts plausibly supporting that "the plaintiff [1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Id*. at 311.  On the fourth prong, the facts alleged "need only give plausible support to a minimal inference of discriminatory motivation" to survive a motion to dismiss.  *Id*.

The City contends that Burgos cannot meet these requirements, because his Complaint fails to raise even a minimal inference of discrimination.  (Dkt. No. 12 at 8–9.)  "To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing 'the more favorable treatment of employees not in the protected group, who are 'similarly situated in all material respects.'"  *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (citations omitted).  A plaintiff can also "provide 'relevant background evidence'" to "shed[ ] light on Defendant's motivation" and "provide[ ] a contextual basis for inferring discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88–89 (2d Cir. 2015) (relying on employer's actions relating to plaintiff's ethnicity to support inference that ethnicity was a motivating factor in adverse action).

Here, the Complaint refers three times to discrimination suffered by Burgos, alleging that (1) "Plaintiff has been the victim of racial and religious discrimination" (Compl. ¶ 10); (2) Burgos was "treated differently than his peers as a result of being Hispanic and practicing Islam as his religion" (*Id.* ¶ 11); and (3) Burgos "has endured disparate treatment since the filing of his

anti-discrimination administrative and court actions" (*Id.* ¶ 14).  Such "conclusory allegations" that Burgos suffered discrimination, absent "any facts to support [the] allegations," fail to "plausibly support even a minimal inference of discriminatory motivation."  *Palmer v. Fannie Mae*, No. 17-2867, 2018 WL 5830504, at *2 (2d Cir. Nov. 7, 2018).

Burgos nonetheless contends that he has alleged facts giving rise to an inference of discrimination, in light of the Department's failure to amend prior evaluations after disciplinary charges were overturned on appeal, compared to the Department's downward amendment of the July 2016 to June 2017 performance evaluation.  (Dkt. No. 17 at 23–24.)  According to Burgos, the Department's inconsistency in its treatment of Burgos's performance evaluations "leads to a strong inference of discrimination where no other legitimate reason exists."  (Dkt. No. 17 at 23.)

However, Burgos alleges no facts permitting a plausible minimal inference that the inconsistency was "motivated by *discriminatory* intent."  *Littlejohn*, 795 F.3d at 311 (emphasis added).  No facts alleged in the Complaint connect the Department's treatment of Burgos to his status as a member of protected racial or religious groups.  Burgos has not attempted to allege that similarly situated employees of other racial or religious groups received more favorable treatment.  Nor has Burgos pointed to statements made by or actions taken by his supervisors or co-workers evincing an awareness of his race or religion, or other background evidence that could create a context permitting an inference of discrimination.

Ultimately, the facts alleged in the Complaint fail to provide minimal support for the conclusion that Burgos's race or religion "was a motivating factor in the employment decision."  *Vega*, 801 F.3d at 87.  Because Burgos has not sufficiently alleged a *prima facie* case of discrimination under Title VII or the NYSHRL, these claims must be dismissed.

### b.    NYCHRL Claims

Burgos also brings claims for discrimination on the basis of race and religion under the

NYCHRL.  The NYCHRL "serves 'uniquely broad and remedial purposes, which go beyond

those of counterpart [s]tate or federal civil rights laws.'"  *Gordon*, 2015 WL 3473500, at *10

(quoting *Constantin v. N.Y.C. Fire Dep't*, No. 06 Civ. 4631, 2009 WL 3053851, at *11 (S.D.N.Y.

Sept. 22, 2009).  As such, claims under the NYCHRL must be given "an independent liberal

construction analysis in all circumstances."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268,

278 (2d Cir. 2009) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't

2009)).

Section 8-107 of the NYCHRL makes it an "unlawful discriminatory practice" for an

employer "[t]o discriminate against [a] person . . . in terms, conditions, or privileges of

employment" "because of the actual or perceived . . . race[ or] creed" of that person.  N.Y.C.

Admin. Code § 8-107(1)(a).  "To prevail on liability" for a disparate treatment claim under the

NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'—

because of a discriminatory intent."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d

102, 110 (2d Cir. 2013).  However, "[t]he plaintiff still bears the burden of showing that the

conduct is caused by a discriminatory motive. . . . She must show that she has been treated less

well at least in part '*because of* her'" protected trait.  *Id.*

For a discrimination claim under the NYCHRL to survive a motion to dismiss, the

complaint must allege that the plaintiff "was fired or harassed"—or otherwise treated "less

well"—"'because of' her protected characteristics," and must "plausibly allege . . . facts that

would give rise to such a connection."  *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 71

(2d Cir. 2016).  As discussed above, Burgos has failed to allege any facts supporting a minimal

inference that Burgos was treated less well *because of* his protected characteristics. Therefore, even with an "independent liberal construction," *Loeffler*, 582 F.3d at 278, the Court must dismiss Burgos's discrimination claim under the NYCHRL.

### C. Retaliation Claims

The City also seeks to dismiss Burgos's Title VII retaliation claims. (Dkt. No. 12 at 9–13.) Title VII provides in relevant part that it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

"A prima facie claim for retaliation under Title VII . . . requires a showing (1) that the plaintiff was engaged in a protected activity; (2) that the defendant knew of that protected activity; (3) that the defendant took adverse employment action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action." *Gordon*, 2015 WL 3473500, at *11. In other words, for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. "[T]he burden for establishing a *prima facie* case of retaliation is '*de minimis*.'" *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

The City contends that Burgos has sufficiently alleged neither an adverse action, nor a causal connection between the adverse action and the protected activity. (Dkt. No. 12 at 10–13.)

The Court first considers whether the acts Burgos challenges constitute adverse employment actions under Title VII, and then addresses causation.

### 1. Adverse Employment Action

The City argues that the acts that Burgos seeks to challenge do not constitute "adverse actions" for retaliation purposes under Title VII. (Dkt. No. 12 at 10.)[7]  Burgos identifies four potential adverse employment actions:  (1) the December 7, 2016 disciplinary complaint; (2) the July 3, 2017 disciplinary complaint; (3) the July 3, 2017 amendment to Burgos's performance evaluation from "satisfactory" to "conditional"; and (4) the July 24, 2017 disciplinary complaint. (Dkt. No. 17 at 14, 19.)

An "adverse employment action" for the sake of a Title VII retaliation claim "is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  "Actions that are 'trivial harms'—*i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience'—are not materially adverse" and thus do not constitute actionable conduct.  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington*, 548 U.S. at 68).  As such, "Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'"  *Id.* (quoting *Burlington*, 548 U.S. at 67).

---

[7]     The City specifically directs this argument against the July 3, 2017 amendment to Burgos's performance evaluation and the July 24, 2017 disciplinary charge.  (Dkt. No. 12 at 10.) This limitation stems from the City having identified these as the only potential adverse actions (*id.*), as opposed to the four potential adverse actions identified by Burgos (Dkt. No. 17 at 14, 19).  Because the extra acts—the December 7, 2016 disciplinary complaint and the July 3, 2017 disciplinary complaint—are seemingly the same type of action as the July 24, 2017 charge, the Court will consider the application of this argument to all four actions identified by Burgos.

Regarding the July 3, 2017 downgrading of the performance evaluation, the City argues that it does not qualify as adverse because the result was a better performance rating than Burgos had received on other occasions, and the evaluation carried no negative consequences. (Dkt. No. 12 at 10–11.) The Court disagrees. As the Second Circuit has held, "a poor performance evaluation could very well deter a reasonable worker from complaining." *Vega*, 801 F.3d at 92. That is particularly true where an employee's eligibility for promotion is premised on receipt of two consecutive "satisfactory" performance ratings. (Compl. ¶ 20.) Being rated "conditional"— while not the worst possible result—thus carries negative collateral consequences that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57.

The City also contends that the three disciplinary complaints are not sufficiently adverse, because Burgos cannot show that the charges have "been actually adjudicated" and have "resulted in any sort of real punishment." (Dkt. No. 12 at 11.) "[D]istrict courts in this Circuit have disagreed as to whether an investigation into disciplinary charges that does not result in any discipline may be sufficient [to] constitute an adverse action in the retaliation context." *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 177 n.30 (E.D.N.Y. 2015). However, district courts have also held that "the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision," *Weber v. City of New York*, 973 F. Supp. 2d 227, 268 (E.D.N.Y. 2013) (quoting *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006)), and that "a disciplinary warning letter may constitute an adverse action in the retaliation context," *Davis v. Goodwill Indus. of Greater New York & New Jersey, Inc.*, No. 15 Civ. 7710, 2017 WL 1194686, at *9 (S.D.N.Y. Mar. 30, 2017) (quoting *Thomson v. Odyssey House*, No. 14 Civ. 3857, 2015 WL 5561209, at *21 (E.D.N.Y. Sept. 21, 2015)).

It is not clear from the Complaint whether to categorize the disciplinary complaints against Burgos as the opening of an investigation, or as the institution of disciplinary proceedings. (Though Burgos's statement that the December 7, 2016, and July 3, 2017 complaints "will be heard at [the City's Office of Administrative Trials]" makes it seem like the latter. (Compl. ¶ 26.)) Regardless, in evaluating whether employers have committed adverse actions, "[c]ontext matters." *Hicks*, 593 F.3d at 170 (quoting *Burlington*, 548 U.S. at 69.) The Court thus looks to the facts alleged in the Complaint to determine whether such disciplinary complaints would deter a reasonable employee of the Department from complaining about discrimination.

Here, Burgos's disciplinary complaints were received against the background of an alleged performance evaluation and promotion system with crucial interdependent components. Having more than one disciplinary complaint in a year disqualifies employees from receiving a "satisfactory" rating (Compl. ¶ 19); two consecutive "satisfactory" ratings are required to be eligible for promotion (Compl. ¶ 20). And even if disciplinary charges are dismissed on appeal, the Department does not retroactively upgrade performance evaluations or restore promotional eligibility. (Compl. ¶ 20.) Given the crucial role disciplinary complaints play in the Department's system for awarding promotions—and the lasting affect it appears they can have even if ultimately dismissed—the Court concludes that receiving such complaints "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57.

Finally, the City contends that it had a "good faith reason[] for the imposition of discipline" with regard to the amended evaluation and disciplinary charges, and that such an action "in accordance with the department's rules . . . cannot be said to be sufficiently adverse

acts." (Dkt. No. 12 at 11–12.)  In this argument, the City is essentially offering its legitimate non-retaliatory reason for the adverse act.  As this Court has explained elsewhere: "It is, of course, possible that the evidence will demonstrate that [the City] had legitimate non-discriminatory and non-retaliatory reasons for [its] actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage." *Robinson v. Gucci Am.*, No. 11 Civ. 3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012).

Accordingly, Burgos has sufficiently alleged that all four challenged acts constitute adverse employment actions for purposes of his Title VII retaliation claims.

### 2.     Causation

The City also disputes whether Burgos has adequately alleged a causal connection between the adverse actions challenged and the protected activity he engaged in.  (Dkt. No. 12 at 12–13.)  In addition to the four adverse actions discussed above, Burgos alleges that he has engaged in six discrete protected activities:  (i) filing a December 18, 2012 internal equal employment opportunity complaint; (ii) filing a January 16, 2013 charge with the NYSDHR and the EEOC; (iii) joining a February 2013 federal class-action lawsuit; (iv) joining a September 2014 state class-action lawsuit; (v) refusing to sign the July 3, 2017 amended performance evaluation; and (vi) filing a July 13, 2017 charge with the EEOC.  (Dkt. No. 17 at 18–19.)

To sufficiently allege causation for a Title VII retaliation claim at the motion to dismiss stage, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90.  This causal connection "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory

animus directed against the plaintiff." *Thomson v. Odyssey House*, 652 F. App'x 44, 46 (2d Cir. 2016) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

The two most recent instances of protected activity—the filing of the July 13, 2017 charge with the EEOC and the refusal to sign the July 3, 2017 amended performance evaluation—closely preceded the final adverse action alleged: the July 23, 2017 disciplinary complaint.[8] Given this temporal proximity, Burgos has adequately alleged a causal connection between these two activities and the July 23, 2017 disciplinary complaint. *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("The three-week period from [plaintiff's] complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity.").

By contrast, the City argues that the gaps between the remaining adverse actions and the instances of protected activity are too great to plausibly give rise to an inference of causation. (Dkt. No. 12 at 12–13.)[9] The City is correct that the first three alleged adverse employment actions lack any apparent temporal proximity to a protected activity. All occurred in December

---

[8]     Whether Burgos's refusal to sign the amended evaluation constitutes "protected activity" of which his employer was aware, however, is less clear. "To qualify as a protected activity, an employee must have a good faith, reasonable belief that the challenged actions violated the law. . . . Moreover, the employer must be able to reasonably understand that the [employee's] complaint was directed at conduct prohibited by Title VII." *Bamba v. Fenton*, No. 17-2870, 2018 WL 6331611, at *3 (2d Cir. Dec. 4, 2018). Burgos's refusal to sign the amended evaluation "because he felt that his rights were being violated" (Compl. ¶ 29), might not be sufficient under this Circuit's precedents to put his employer on notice that he was objecting to conduct prohibited by Title VII. *See Bamba*, 2018 WL 6331611, at *3; *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15–17 (2d Cir. 2013). However, because the City does not contest this point in its briefs, the Court does not address it.

[9]     The City directs this argument against the July 3, 2017 amended evaluation only, and not the December 7, 2016 or July 3, 2017 disciplinary complaints. (Dkt. No. 12 at 12.) Again, this likely stems from the City having recognized only two of the four adverse actions challenged by Burgos. (Dkt. No. 12 at 10.) Because the parties' causation arguments apply equally to the remaining three adverse actions, the Court considers them all together.

2016 or July 2017, over two years after the closest preceding protected activity in September

2014. "This gap . . . is too long to support a retaliation claim based solely on temporal

connection." *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (reasoning that a 16-month

gap was too long to infer causation through temporal proximity alone). Burgos contends,

however, that he is not relying on temporal proximity to prove causation, but rather an

"intervening pattern of antagonism." (Dkt. No. 17 at 18–21.)

Temporal gaps that are too long to give rise to an inference of causation "may be bridged

by an intervening pattern of retaliatory treatment." *Bader v. Special Metals Corp.*, 985 F. Supp.

2d 291, 324 (N.D.N.Y. 2013). "[E]vidence of an intervening pattern of antagonism between the

complain[an]t and her employer"—occurring between the protected activity and the adverse

act—"could support an inference that an alleged retaliatory act that was taken against the

complainant was causally related to her complaint of discrimination." *Chan v. NYU Downtown*

*Hosp.*, No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004). Such allegations of

adverse actions occurring "against a backdrop of continuing antagonism and frustration of

[plaintiff's] professional ambitions" can "establish a drumbeat of retaliatory animus from which

a plausible inference of causation can be drawn." *Duplan*, 888 F.3d at 626.

Here, Burgos contends that "the link is clear" between his "history of engaging in

protected activity" and the pattern of "retaliatory actions of the defendant preventing him from

being promoted." (Dkt. No. 17 at 21.) From December 2012 to September 2014, Burgos

engaged in four instances of protected activity. In response, Burgos contends that he received

eight disciplinary complaints as of 2015 (Compl. ¶¶ 14–15), and unsatisfactory performance

ratings in June 2013 and June 2014 that caused him to be passed over for a promotion in

November 2014 (*Id.* ¶¶ 16–18). Between that point and the adverse actions in question, Burgos

received another two disciplinary complaints and one additional less-than-satisfactory performance rating. (*Id.* ¶¶ 23–24.) In addition to this chain of allegedly retaliatory events, there is the fact that six of Burgos's eight disciplinary charges were dismissed on appeal (*Id.* ¶ 15), supporting an inference that the charges were improperly levied. Additionally, there is an inconsistency between the Department's refusal to positively amend Burgos's previous performance evaluations in May 2016 and its prompt negative amendment to his performance evaluation in July 2017 (*Id.* ¶¶ 21, 26), suggesting an uneven application of the Department's policy regarding amended evaluations based on whether the amendment would help or hurt Burgos.

Through these allegations in the Complaint, Burgos has alleged both a pattern of antagonism between himself and the Department in the period between his protected activity and the adverse acts in the limitation period, and additional circumstantial evidence of unfair treatment. In light of the "*de minimis*" burden for establishing a *prima facie* case of retaliation, *Duplan*, 888 F.3d at 626, the Court concludes that Burgos has sufficiently alleged a causal connection as to the December 7, 2016 disciplinary complaint, the July 3, 2017 disciplinary complaint, and the July 3, 2017 performance evaluation amendment.

Ultimately, for all four of the challenged acts, Burgos has "plausibly allege[d] that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. The City's motion to dismiss Burgos's Title VII retaliation claims is thus denied.

## IV.     Conclusion

For the foregoing reasons, the City's motion to dismiss is GRANTED in part and DENIED in part.

The City shall file an answer to the remaining claims within 14 days of the date of this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 11.

SO ORDERED.

Dated:  March 21, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge